# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs August 6, 2002

## STATE OF TENNESSEE v. WILLIE NEAL BURTON

### Appeal from the Circuit Court for Chester County
#### No. 01-106     Roger A. Page, Judge

---

### No. W2001-02997-CCA-R3-CD - Filed September 5, 2002

---

The defendant, Willie Neal Burton, appeals as of right from the Chester County Circuit Court's revocation of his community corrections sentence. The trial court found that he had violated the terms of his community corrections sentence by conduct unbecoming good citizenship, involving arrests and convictions for subsequent offenses while serving his community corrections sentence. It sentenced the defendant to a six-year sentence as a career offender. The defendant contends that the trial court erroneously revoked his community corrections sentence and that the resulting six-year sentence is excessive. We affirm the trial court's revocation and sentence.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

JOSEPH M. TIPTON, J., delivered the opinion of the court, in which THOMAS T. WOODALL and JOHN EVERETT WILLIAMS, JJ., joined.

George Morton Googe, District Public Defender, and Nina Wong Seiler, Assistant Public Defender, for the appellant, Willie Neal Burton.

Paul G. Summers, Attorney General and Reporter; P. Robin Dixon, Jr., Assistant Attorney General; James G. Woodall, District Attorney General; and James W. Thompson, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The defendant pled guilty to burglary of an automobile, a Class E felony; theft of property valued under $500, a Class A misdemeanor; possession of drug paraphernalia, a Class A misdemeanor; and resisting arrest, a Class B misdemeanor. For the felony, he agreed to a six-year sentence as a Range III, career offender, which was above the range for which he qualified. He also agreed to concurrent sentences of eleven months, twenty-nine days for the misdemeanors. All of the sentences were to be served on community corrections. He began serving his community corrections sentence on August 22, 2001. On October 5, 2001, a warrant issued for his arrest for violating the terms of his community corrections sentence. The warrant and subsequent violation report stated

that the defendant had failed to pay court costs and fines, to verify his employment, to remain arrest-free, and to report his new arrest to his case officer. The violation report noted that the defendant's father had told a case officer that the defendant had a roofing job and that the defendant provided proof of payment of costs upon his incarceration. In the interest of saving time at the revocation hearing, the state limited the grounds to the defendant's failure to report his subsequent arrests and to his convictions for offenses committed after he was placed on community corrections.

At the revocation hearing, Jamie Hurst, the defendant's community corrections case officer, testified that shortly after the defendant began his community corrections sentence, he was arrested on September 24, 2001, for theft of property under $500, occurring on that day. She said that the defendant pled guilty to this offense and was convicted on September 26, 2001. She stated that she was present in court when the defendant entered this plea. She stated that the defendant's second arrest occurred on November 9, 2001, for two counts of attempted forgery of an amount over $500 occurring on September 13, 2001. She said that he pled guilty to these offenses on November 9. Ms. Hurst said that he did not report either of these arrests to her as required by the terms of his community corrections sentence. She acknowledged that the reason the defendant did not report the arrests to her was that he was in jail from the time of the September 24 arrest, but she stated that individuals placed in the community corrections program were told to have another person report an arrest to their case officer.

Ms. Hurst testified that the defendant had told her that he was addicted to crack cocaine. She said that when she was first assigned to the defendant's case, he was still in jail and told her that he needed drug treatment. She said that after he was released from jail and put on community corrections, she told him that she had found an available bed at a long-term, inpatient drug treatment facility in Memphis, Tennessee. She said that at that time, the defendant told her that he needed to be with his family and that he was going to attempt to overcome his drug addiction on his own. She said that she asked the defendant to contact her if he changed his mind but that she heard nothing more on the subject until the defendant had been incarcerated following his September 24 arrest. She said at that time, he told her that he was willing to participate in drug treatment.

She stated that the defendant had told her that he was working as a roofer. She said that once the defendant's father called her and told her that the defendant was on a roofing job. She said that other than this telephone call, she had not been able to verify the defendant's employment. Ms. Hurst testified that at the time the violation warrant issued, the defendant had not paid any court costs but that when she saw him in jail, he produced a receipt showing that he had made his $50 payment.

The defendant testified that he agreed to a sentence above his range for the present convictions in order to be released from jail. He said that he thought he would abide by the terms of his community corrections sentence but that he violated them because of his addiction to crack cocaine. He stated that after being released from jail into community corrections, he worked for his father doing roofing for thirty to thirty-five days until he was arrested and put in jail. He said that his father told Ms. Hurst about his employment as a roofer. She stated that while on community

corrections, he stole property valued under $500 in order to sell it to get money with which to buy drugs. He said that he also forged someone else's checks, cashed the checks, and used the money to buy drugs. The defendant said that he wanted drug treatment and was willing to stay in a long-term, inpatient facility. He stated that he had been in the Department of Correction (DOC) several times and believed that drug treatment would help him more than spending time in prison. He stated that he had complied with all of the other terms of his community corrections sentence except for his new arrests.

On cross-examination, the defendant admitted to convictions for aggravated assault and carrying a deadly weapon, for which he received sentences of four-years and eleven months, twenty-nine days respectively on July 24, 1989. He acknowledged that he was convicted of aggravated burglary and theft of property valued under $500 and that he received sentences of four years and eleven months, twenty-nine days respectively on August 26, 1992. He agreed that he was convicted for robbery and possession of drug paraphernalia, for which he received sentences of six years and eleven months, twenty-nine days on March 16, 1995. He said that he was placed on probation for some of these offenses, that his probation was revoked, and that he went to prison. He said that he also had a drug problem at the time he committed these other offenses. He admitted that at one time, Ms. Hurst offered to help him enter a drug treatment program. He said that he never refused treatment but that he simply did not decide to go at that time. He stated that he told Ms. Hurst that he would enter treatment now.

The trial court found that the defendant had violated his community corrections sentence by his conduct unbecoming good citizenship and his subsequent convictions on September 26, 2001, and November 9, 2001. It revoked the defendant's community corrections sentence and ordered him to serve a six-year sentence in the DOC. It stated that it would recommend drug treatment and the Special Needs Unit for the defendant while incarcerated.

Although the defendant admits that he violated the terms of his community corrections sentence, he contends that the trial court's disposition of the case was improper. He argues that in light of his addiction to crack cocaine and his willingness to submit to long-term drug treatment, the trial court should have imposed an alternative to continuous confinement such as long-term drug treatment, shock incarceration followed by drug treatment, additional conditions for his community corrections sentence, or a term of probation following drug treatment. The state contends that the trial court did not err in revoking the defendant's community corrections sentence because overwhelming evidence existed that he violated its terms. We agree with the state.

Trial courts have the authority to revoke a community corrections sentence upon finding by a preponderance of the evidence that the defendant has violated the conditions of the sentence. State v. Harkins, 811 S.W.2d 79, 82 (Tenn. 1991); see Tenn. Code Ann. § 40-35-311. If the evidence of a violation is sufficient to enable the trial court to make a conscientious and intelligent judgment regarding revocation, that judgment will not be disturbed on appeal. Id. At the revocation hearing in the present case, the defendant admitted that he had violated the terms of his community corrections sentence by acquiring his subsequent arrests and convictions. The evidence from Ms.

Hurst, who was present when the defendant pled guilty to the September 24 offenses, and the defendant is more than sufficient to allow the trial court to exercise its discretion intelligently and conscientiously in revoking the defendant's community corrections sentence.

The defendant also contends that the trial court's imposition of his original sentence of six years in continuous confinement as a Range III offender was excessive in light of the circumstances surrounding his violations. He asserts that the trial court had the authority to reduce his sentence under Tenn. Code Ann. § 40-36-106(e)(4) and maintains that an appropriate sentence would have been four years as a Range II offender. He argues that the trial court should have considered his potential for rehabilitation as reflected in the circumstances of the new offenses as they related to his drug addiction, his demonstrated need for drug treatment, his status as a nonviolent offender, and the fact that his conduct neither caused nor threatened serious bodily injury. He argues that he should have been allowed to continue working to provide for his family and contribute to society. The state points out that the defendant pled guilty and agreed to a sentence of six years at Range III. It contends that this fact along with the defendant's previous inability to comply with a sentence involving release into the community reveal that the trial court did not err in imposing the original, agreed sentence. We agree with the state.

The defendant agreed to be sentenced as a career offender. The fact that he failed his community corrections obligations did not change the agreement. The defendant admitted that he violated the terms of his community corrections sentence by acquiring new arrests and convictions. Even considering the sentencing principles, we are not impressed by the defendant's claims of amenability to rehabilitation. The defendant testified that he was addicted to drugs during his commission of numerous crimes before those in the present case. Despite this long-term addiction, the defendant chose not to pursue drug treatment when his case officer attempted to arrange it. This in combination with the defendant's inability to abide by the terms of earlier sentences involving release into the community reveal that the trial court did not abuse its discretion in imposing the original sentence.

Based upon the foregoing and the record as a whole, we affirm the judgment of the trial court revoking the defendant's community corrections sentence and imposing his original sentence.

_____
JOSEPH M. TIPTON, JUDGE

-4-